Good morning, Your Honors, and may it please the Court, Andrea Yamswong with the Office of the Federal Public Defender on behalf of Petitioner and Appellant Kelly Keller. Mr. Keller is a mentally ill, learning disabled, pro se petitioner, serving a 139 years to life sentence. The District Court erroneously dismissed his petition as untimely by eight days. Unless this Court has any preliminary questions about diligence or statutory tolling, I'd like to jump straight into the extraordinary circumstance of the equitable tolling analysis. Well, I guess that, do you have any case law suggesting that equitable tolling cannot be denied based on a lack of diligence earlier in the post-conviction process? Because apparently that occurred here. So, I think the en banc case that was just decided in March of this year, Smith v. Davis, makes clear that petitioners do have to show diligence throughout the entire one-year statutory period. I submit that the record does provide evidence that Mr. Keller was acting diligently during the 364 days that it took for him to file his initial state habeas petition. Between November 2014 and January 2015, Mr. Keller, who is a mentally ill, learning disabled petitioner, was relying on jailhouse lawyer Arthur Carr to assist him file his state habeas petition. Under Bills v. Clark, that is an act of reasonable diligence, given that he could not have been able to file a petition on time without any assistance. But the district court did not find that diligent. What was clearly erroneous about the district court's finding on diligence there? The district court failed to consider a critical fact, which is that around January 2015, Mr. Carr, when he was transferred out of the prison that Mr. Keller was in, took Mr. Keller's files. Among those files were Mr. Keller's appellate files, which included his transcript. If you look at the order accepting the magistrate judge's report and recommendation, the district court judges did not acknowledge that Mr. Keller was without his most fundamental of documents, his transcripts, between the months of January 2015. What's the standard of review for that finding, though? It is... I think it's... The district court gave equitable tolling in certain areas and not in other areas. So, I mean, it would seem that we have the same standard of review on each of them. And because we don't maybe agree, you know, how are we... It's not de novo, I don't think, on that. It's not de novo. I think it's a clearly erroneous standard. And the district court clearly erred in failing... I mean, they don't even mention the fact that Mr. Keller was without his transcripts between the months of January and July 2015. They speak about Mr. Keller's correspondence with trial counsel and the district attorney in an attempt to obtain trial counsel's files, but they don't refer to Mr. Keller's attempts to obtain appellate counsel's files. And in Espinoza versus... Espinoza-Matthews and other cases out of this court, it is acknowledged that it is unrealistic to expect a pro se petitioner to prepare a petition when he doesn't even have his transcripts. And so when you look at that one-year period, Mr. Keller was without his transcripts between January and July 2015. Once he got his transcripts... Counsel, I think the state argues that Mr. Keller didn't even cite those transcripts in the petition. Is that correct? That's not correct, Your Honor. He cites to his transcripts. He uses them as exhibits in his petition. So he needed the transcripts to raise claims in particular with respect to jury deliberations in the sanity phase and the citing to notes that the jurors sent to the court. Ms. Yomsum, may I ask a question here? Should we remand to the district court to reconsider whether its decision conforms with Smith v. Davis? I think this court should, Your Honor. With respect to diligence in Smith v. Davis, this court acknowledged that the court has been inconsistent over the years with respect to when exactly a petitioner has to show that he was... It might be helpful if you tell us how Smith v. Davis helps your client. If it doesn't help your client, there wouldn't be any reason to remand. So how does it help your client? I think it does help, Your Honor, because Smith v. Davis says that this court has been inconsistent in its decisions with respect to what period of time a petitioner has to show diligence. So, for example, in 2017, in Grant v. Swarthout, this court said that a petitioner doesn't have to show diligence. In this case, for example, Mr. Keller would not have had to show diligence under Grant v. Swarthout. He only would have had to show diligence after the extraordinary circumstance had been lifted. And so because it was unclear what period of time petitioner had to show diligence and had to prove diligence, I think the district court should be allowed another opportunity to decide whether Mr. Keller is entitled to an evidentiary hearing, for example, to prove up his allegations that he was diligent throughout the 364-day period it took for him to file his initial state habeas petition. Counsel, do you have any problem with the district court's analysis of causation here? It seemed to suggest that it was because of the lack of diligence to file the state court petition that he didn't pursue diligence. But the causation was the eight days that he didn't know about the state court's decision, and he had an extra day. So if he found out about the state court's decision on the day that the Supreme Court issued the decision, he wouldn't have enough time to file within the 365 days. Is that correct? That's correct. Because of Mr. Keller's mental illness, because he was separated from his files, because he basically only had four months from the time he obtained his transcripts to the time his federal clock would have run, Mr. Keller managed to file his state habeas petition with just one day remaining on the clock. Under those circumstances, it would have been impossible for Mr. Keller to learn of the California Supreme Court decision and file his federal petition without his one-year clock running. But the delay was caused not by the 364 days. It's the delay was caused by the lack of finding out about the Supreme Court's decision, and he had enough time to file it if he found out on the same day that the Supreme Court issued its decision, right? That's correct. The only correction or clarification I'd like to make is it is a combination of factors that led to Mr. Keller filing his state habeas petition with just one day left on the federal clock. And so I think under Holland v. Florida, this court has to consider all of those circumstances, including his mental health and cognitive issues, his separation from his trial files, and his inability to obtain his transcripts until July 2015. All right. So why don't you tell me just if all right, clearly erroneous is a tough standard to overturn. And it's and in looking at it, it seems to me that the district court maybe gave him some tolling where I wouldn't have given some tolling and vice versa or whatever. So tell me a legal error that would entitle your client to relief. Well, the district court did not give Mr. Keller any equitable tolling, and it did not acknowledge that Mr. Keller had made a non-frivolous showing under bills versus Clark that he is entitled to that he is at least entitled to an evidentiary hearing under bills versus Clark to determine whether his his mental illness was so severe such that he he was not able to a timely effectuated. The filing of his federal petition, would you like to reserve some time for rebuttal? I would, Your Honor. Thank you. Unless my colleagues have any questions at this point. They don't appear to. So we'll go to the balance for your rebuttal. Thank you. All right. Go ahead, Mr. Carlin. Maybe you could start with what impact, if any, does our on bonk opinion and Smith v. Davis have here? Absolutely. Good morning, Your Honors. Louie Carlin for respondent, Deputy Attorney General. Excuse me. The recent on bonk decision actually assists us respondent in that the main holding there was to reject the stop start method of computing equitable tolling. And that's the real problem here is that although the eight days at the end would seem to push Mr. Keller up to the wall, the point is that you don't bank time. You have to look at the entire spread of time. I mean, I've never seen an attorney file something that fast. I mean, this is not the most dilatory individual I've seen in my days. I'm going to say that. I mean, we see some pretty bad dilatory people. So I'm wondering, I mean, the one day is kind of remarkable. But how would the state be harmed if we determine that Keller was entitled to equitable tolling in that period? Oh, well, because there's the record just does not support that the district court. All right. That's why. OK, that's why you don't want us to make that. But how would you be harmed here? Tell me how you would be harmed here. Because the state is entire entitled to rely on the Congress's one year limitation period. And well, that's the way the district court approach makes it more difficult to calculate at this one year time limit. I don't think so, Your Honor. The onus moved to petitioner, as it should, to try to show statutory tolling. He got every conceivable amount of statutory tolling and included in that period of time as a district court found. For instance, there were 62 days to file the California Court of Appeal habeas petition. That's giving him credit for the 10 days of mail service. So in addition to those 10 days, 62 days to file a habeas petition. That's not significantly different than the Superior Court petition. And you add on to that all the time leading up to the year it took to file in Superior Court itself. So these are the problem here that we have to. It's not a year. According to the district court's analysis, it's not a year he has to file. He has the time it takes for him to file and receive notice of the state court's opinion. So how do we know what time limit that is? Well, notice has always been looked at as notice of general mailing. Notice has always been looked at as part and parcel of the one year. That's never been an extraordinary situation. Fouay v. Beiter, Ramirez, all those cases talk about situations where you have an extended, unexplained delay from the Court of Appeal. Never the 10 days it takes ordinary service by mail. So we're looking for extraordinary things. Well, but what about, why shouldn't a determination that a petitioner was entitled to gap tolling from finding that the petitioner was not diligent in pursuing post-conviction remedies in state court? The gap tolling essentially gives petitioner really extra time in which he's, in a way, just doesn't even have to show diligence. He's given time for as long as he spends in between filing in state court as he goes up the chain. And again, as this court found, 62 days to file in the Court of Appeal, to file a habeas petition that's not significantly different from the Supreme Court, that's not showing diligence. But again, we're building into this one year rule. Quite a generous situation for a prisoner in Mr. Keller's situation. If we were to agree with you, what do you think an en banc Court of the Ninth Circuit would do with that? I think it's a very straightforward case. This is a situation where petitioner has to show the tolling standard, he has to show extraordinary circumstances. He hasn't come close. And I would like to focus on my colleague's statements about mental disability, mental health, delays. There is no support in the record for any of these claims. The statement about mental health and fourth grade reading ability, that's squarely rejected on the record of this case. When Mr. Keller complained about lack of access to prison library services, there was a full out hearing with three levels of appeal. The senior librarian interviewed petitioner because she was worried about this fourth grade reading statement in his file. She interviewed him personally, questioned him about whether he understood his, she called it his appeal, but his legal matters, and found that he understood them perfectly well, needed no assistance. She found that the fourth grade reading level was not reliable. There's been no showing, zero showing of mental health problems. My colleague in the papers has relied on a finding by the trial, Pence trial retained psychologist Mr. Rothberg. This was in 2011, and the point of that, excuse me, may I just cite the record for the findings by the law librarian. In ER 174, 175, and 176, ER 62 through 63, these are all findings that reject the notion of mental health of a reading problem. With regard to Mr. Rothberg, Dr. Rothberg, these findings are about whether he had the mental capability to form the intent to commit the crime. It has nothing to do with the bills now. In fact, if we look at the record, what would matter would be the mental status evaluation. That's ER 121. The findings by Mr. Rothberg were that he could function perfectly well and had no disabilities, no discernible disabilities. Do you agree that Mr. Keller should receive equitable tolling for the eight days it took for him to find out about the California Supreme Court's decision? Absolutely not. That simply does not fit within the Ninth Circuit precedent, does not fit within the holiday. Those are typical. What about Ramirez? Ramirez is totally different. Ramirez is a situation of a month and a half of unexplained delay in receiving the order from the court, the California court. A month and a half. That's not service by mail. When equitable tolling needs to be something extraordinary and out of the petitioner's control, certainly service is out of his control, but it is not extraordinary. It is the antithesis of extraordinary. It's what is built into everything, service by mail. So under your view of the law, the petitioner had to anticipate the time that it would take for him to receive notice of the California Supreme Court's decision? Absolutely. Absolutely. Yes, but what time period is that? You're saying that's 10 days? So instead of 365 days, he really only has 355 days to file his federal petition? Is that what you're arguing? No, I'm saying that we don't count. Equitable tolling doesn't count that way. Equitable tolling looks at whether you're diligent over the entire period. Yes, of course, you cannot be charged for something you don't know about. But, yes, you build in time for service by mail. Absolutely. And there is no case, I'm aware of no federal case that has ever said that time for service by mail counts as equitable tolling. Is there a case that suggests that that time should be subtracted from the one-year limit? It's not subtracted, Your Honor. It's just built into the one year. You have to show something that is extraordinary. The one-year period encompasses, as this court put it in Schaffer and Crossford, incorporates the normal vicissitudes of prison life. Yes, that's why there's a year. But what if it took 30 days? Would that be extraordinary then? It might be, Your Honor. And that's what happened in Ramirez. The Ramirez court remanded. They did not find equitable tolling. They remanded to find out exactly what happened. What day was it served? What day did he actually get it? So, yes, it should not take a month for service by mail. That would show that possibly prison mail let him down. We can get the mail logs. We have the mail logs in this case. So, yes. But if there is an unexplained delay, something that's not attributable, it's extraordinary. No, 10 days to receive your rejection letter from the California Supreme Court is not extraordinary. The district court in this case, his findings were completely in accord with this court's precedent, running right from all of its interpretations of the Holland decision. All right. Your time's up. But if either of my colleagues have any additional questions, I want to permit them. No. Judge Pumate? No, thank you. All right. Thank you for your argument. And then, Ms. Jampson, you have, it looks like, a minute and three seconds on the clock. Unless, Your Honor, I have any questions you'd like me to ask for the remainder of my time, I'd just like to focus on the mental health, mental illness prong of the extraordinary circumstances argument. Mr. Keller had been diagnosed with bipolar disorder and had been taking medication for it at least two years before he even conducted, committed this offense. And that's in Dr. Rothberg's report, which are included in the ERs. So this illness is not something that he came up with as an incentive to have a standing phase hearing or something that he just came up with. He filed it in one day when he, I mean, he can do things. He had assistance, Your Honor. If you look at the California Supreme Court petition, there is a declaration either by him or by the jailhouse lawyer who assisted him, indicating that he had assistance in preparing that California Supreme Court petition and obviously in filing it within that one day period of receiving notice. So, Mr. Keller, bipolar disorder, has had bipolar disorder for a very long time. Mr. Carlin mentioned that, you know, there were times when Mr. Keller, for example, was able to represent himself on appeal with respect to the library matter. But bipolar disorder is an illness that waxes and wanes. And we don't know how the mental illness was impacting him during that one-year statutory period. And so that is something that is worth remanding to explore further at an evidentiary. All right. Your time is up, unless either of my colleagues have any additional questions. Nothing. Nothing. Thank you. All right. So your time has expired. We actually went a little bit over. So thank you both for your arguments in this matter. And it will stand submitted. Thank you.
judges: Callahan, Watson, Bumatay